Monell, J.
The ground upon which I put my decision in overruling the defense at the trial, was that the facts stated in the answer did not constitute a counter-claim. It was mainly urged by the defendants’ counsel, both at the trial and on the argument of the exceptions in the general term, that the defendants had acquired a lien upon the fund in their hands, belonging to the plaintiff as assignees, by virtue of their attachment against the property of Lanes, Boyce & Co. It was not urged, or at least much urged, that irrespective of the attachment, the defendants, as judgment creditors of the .plaintiffs’ assignors, having exhausted their remedies at law for the collection of their debt, were in a position to question the validity of the assignment, and to obtain satisfaction out of the assigned property or its proceeds, not distributed or disposed of by the assignees.
My opinion as to the effect of the attachment remains unchanged, and I am, therefore, contented with the result arrived at by my brother Moncrief, and with the reasons furnished by him for it, that the defendants did not get any lien upon the fund under their attachment.
An examination which I have made, however, of the other branch of the defense, has satisfied me that I was in error in excluding it upon the trial,
*159 The defendants have obtained a judgment against Lanes, Boyce & Co. the plaintiffs’ assignors, and have procured an execution to be returned upon it unsatisfied. The debt due by the bank to the plaintiffs arose from a deposit made by the latter with the bank, of the proceeds of the assigned property. Such proceeds were held by the plaintiffs as trustees for the creditors of Lanes, Boyce & Co. and were subject to all the equitable rights of such creditors. Any creditor, having exhausted his remedies at law, could attack the validity of the assignment, on the ground of fraud, and reach by a judgment avoiding the assignment, any property remaining in' the hands of the assigees, or which was subject to their control.
There cannot be a doubt, that a judgment creditor could go into equity and reach the proceeds of the assigned property ; and there is nothing so inconsistent in the relation of the defendants, as debtors to the plaintiffs and creditors of Lanes, Boyce & Co. as can deprive them of such right.
It must be conceded, I think, that the defendants could have become the actors, and could have impleaded the assignees, and thereby have reached the property of their fraudulent judgment debtor ; and it is immaterial whether the fund was in their own hands or in the hands of a stranger.
A judgment and execution creditor can always follow property fraudulently assigned ; and until it has passed from the assignee, in execution of the trust, it is subject to the decree of the court declaring the assignment void.
If the bank had paid the money to the plaintiffs, the former could immediately have enjoined the latter from disposing of it; and the court by its decree could have compelled its application to the defendants’ judgment against Lanes, Boyce & Co.; and I can see no reason why the bank cannot refuse to pay the money and set up as a counter-claim to the plaintiffs’ action, the same facts, which if stated in a complaint by them as plaintiffs, against the assignees as defendants, would be regarded as a good cause of action.
The Code, in blending actions and allowing equitable defenses to be made to strictly legal causes of action, has, doubt *160 less, opened a wide field of investigation in a single action; and it will always be difficult to apply principles so diverse as those of law and equity, upon a single trial. The causes of action require different modes of trial; the legal part by a jury and the equitable by the court without a jury.
Nevertheless, notwithstanding these real, not conjectural, difficulties, a defendant may interpose a as many defenses and counter-claims as he may have, whether they be such as have been heretofore denominated legal or equitable, or both.”' (Code, § 150.)
The facts stated in the defendants’ answer arose out of transactions connected with the subject of the plaintiffs’ action. The action is to recover a debt due by the defendants to the plaintiffs. But such debt (and it must be so regarded between these parties,) is in reality a deposit with the defendants of the proceeds of the assigned property. In the hands of the plaintiffs, it is trust money to be applied in execution of the assignment, but subject at all times while remaining in their possession, to the equitable rights of creditors. The plaintiffs have no interest except to discharge their duty as assignees faithfully ; and when they are interrupted by the court, their responsibility ends.
The equitable right, therefore, of the defendants to have this money applied in satisfaction of their judgment, is so immediately connected with the subject of the action, that 1 cannot entertain a doubt, that it constitutes a counter-claim within the meaning of the Code. Very probably the. court will be somewhat embarrassed in trying the issues, for the reasons I have already stated; but as the plaintiffs’ case is admitted by the answer, and the counter-claim is the only subject of contention, I presume the issue will have to go to the special term for trial without a jury.
Entertaining these views, I concur in sustaining the exceptions and in granting a new trial, upon the sole ground however, that the defense set up in the answer constitutes a counter-claim, and should not have been excluded.
*161 Moncrief, J.
The refusal to dismiss the complaint upon the plaintiffs resting their case was erroneous. The complaint alleges, and the answer admits by not denying, that the plaintiffs drew their bank check in writing, addressed to the defendants, * * * the said plaintiffs caused the same to be presented to the defendants, and set out the check in its words and figures, signed by both the plaintiffs, “ Leroy M. Wiley, by G-. R. J. Bowdoin, his atty.” There is nothing in the law to prevent Mr. Wiley adopting as his signature that which is written for him by another. The objection might be taken, with some force, upon presentation at the bank, that the check was not signed by each of the assignees, the signature of one being by some person to it not known to be authorized to sign for him. The learned counsel for the defendant, while it is retained in the case, takes no notice of this exception in his points, nor was it alluded to upon the argument. The great and only question remaining in the case is, whether the defendants, having obtained an attachment against the assignors of the plaintiffs, could and did take steps and proceedings thereunder, that they can interpose as a defense to this action, being for moneys deposited with the defendants by them as assignees, that the assignment to them was fraudulent and void, and have such moneys appropriated to the payment of the claim of the defendants.
The theory of the answer proceeds upon the assumption that “ the sheriff having left a certified copy of the attachment with the defendants,” created a lien upon the moneys deposited generally, not specially with them. This is construed in the answer to be “ attaching the said moneys, as it is subsequently averred that a notice was also served “ showing the property levied on and the points assume and proceed upon the same theory. There are several tests of the soundness of this view : 1st. The warrant under which the sheriff acted directed him to seize the property of the defendants named therein ; and as it was not shown to be, and cannot be assumed, that $9000 of money is incapable of manual deliv *162 ery, his further duty was to “ safely keep it.” (Code, § 232.) If such a levy and seizure was made, it ought not to be true, as the answer alleges, that the sheriff has not been able to find any property of the defendants in said judgment, to levy upon and seize, under said execution, for the reason that the execution takes that which the sheriff under his warrant has attached. ' 2d. If the sheriff did give notice to the president, showing the property levied on, and it was capable of being taken into possession, he clearly would be liable to an action at the suit of these plaintiffs, and the thing'attachéd, in the eye of the law, must be in possession of the sheriff. (Wood v. Orser, 25 N. Y. Rep. 353.) 3d. Assuming that the money on deposit, and sought to be reached by the attachment, was incapable of manual delivery, it must be admitted to be so for the sole reason that the plaintiffs had no specific money on deposit, and then it must follow, as a legal consequence, that no seizure could have been had, and notice of the property levied upon could not have been given. 4th. Whether the money was capable or incapable of manual delivery, if acts of the sheriff were such, under his attachment, as to make him liable as a trespasser, then the law assumes that he has actual or constructive possession, and his duty to the plaintiff is prescribed by the Clode. The remedy for the defendants is proceedings against the sheriff. He alone, until judgment and execution in fkvor of the plaintiff in the attachment suit, has the right to the possession of the property levied upon. The sheriff could not have made a levy upon the money deposited with the defendants ; the plaintiffs, from the day of making the several deposits, ceased to have any specific property in the Bank of the Eepublic ; the relation of debtor and creditor was created ; the bank was not the bailee of property entrusted to them to be returned in specie, upon demand. (6 N. Y. Rep. 76. Story on Bailm. § 95, et seq.) If property of the plaintiffs was in possession of the defendants, it tiecessarily must' have been either in gold, silver, bank bills or treasury notes of the value of $8051.41; and in the absence *163 of any averment, in the answer, that such an amount in either character of money is “ incapable of manual delivery,” we must assume that the sheriff, when he levied upon it, saw it and could have taken it, ,and would have safely kept it. (See Wood v. Orser, 25 N. Y. Hep. 353.) That money in specie may be attached, there is no doubt. (Drake on Attach. §244. Handy v. Dobbin, 12 John. 220. Turner v. Fendell, 1 Cranch, 117. Sheldon v. Root, 16 Pick. 567.) That a levy, an actual seizure of personal property of this description, is necessary to create a lien, see Drake on Attach. 2d ed. § 255, et seq. ; 6 Hill, 363; 15 Abb. 244, note ; and 12 id. 379, and cases there cited.
Ch. J. Bosworth, in his opinion, (upon the motion to strike out the answer as frivolous,) assumed that specific property had been seized under the attachment.. He says : “ Instead of attaching property fraudulently transferred,- the sheriff has attached its proceeds.” (Story on Bailm. § 125.) In Hall v. Stryker, and Thayer v. Willet, the goods were seized by the sheriff. Story on Bailments, § 129, says : “ The creditor in the suit has no property or interest whatever in the goods attached, and can maintain no action for any wrong or injury done to them by any person, * ■ * His sole remedy is against the officer.” .
If the sheriff has attached any property, having the legal right to the custody thereof, he can maintain ah action for it, either to reduce it to possession, or for injury done to it, in replevin, (9 Mass. R. 112 ; 16 id. 465 ;) trover, (9 id. 104;) or trespass, (1 Pick. 232, 389.)
As the defendant in the attachment suit still retains the residuary interest in the property seized, it follows that his creditor cannot interpose the defense set up in this action, and that the several exceptions taken at the trial are untenable. I dissent from the views entertained by my brethren relative to a counter-claim or set-off having been interposed as a defense, save as predicated upon the supposed lien, by virtue of the *164 attachment, and differ as to the legal effect thereof, if set up in this action; but as a new trial is inevitable, I have not deemed it useful to write a dissenting opinion.
New trial granted.
Note. This case was reversed on appeal from the judgment rendered at general term, by the Court of Appeals, solely upon the ground that the defendants had not obtained an equitable lien on the funds in their hands, by commencing an action to set aside the assignmént, which, it seems, might have been a cross action. (35 N. Y. Rep. 320.)—Reporter.